United States Court of Appeals
Fifth Circuit

**F I L E D**

December 15, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No. 04-10656

**SEALED APPELLANT,**

Petitioner-Appellant,

versus

**SEALED APPELLEE,**

Respondent-Appellee.

**Appeal from the United States District Court
for the Northern District of Texas**

Before BARKSDALE, GARZA, and DeMOSS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

In this expedited appeal, Appellant Father seeks the prompt return of his two children to Australia, their country of habitual residence. The relief is sought under the Hague Convention on the Civil Aspects of International Child Abduction, 25 Oct. 1980, T.I.A.S. No. 11,670, 19 I.L.M. 1501 (the Convention), implemented in the United States by the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601-11611 (ICARA). Applying the Convention, the district court determined: Father was not exercising his custodial rights; therefore, Mother did not wrongfully remove their children from Australia. Accordingly, the district court did not order the children's return. **VACATED; RENDERED; REMANDED** to

district court to determine the details concerning the children's prompt return to Australia.

## I.

Appellant is the Australian-citizen father of two Australian-born children, ages two and four. Appellee, the children's mother, is an American citizen who lived in Australia for approximately nine years before returning to the United States in 2003. Father and Mother have never been married, but lived together with their elder child for approximately 18 months before Mother and child moved out. At that time, Mother was pregnant with her second child with Father. He has never had primary physical custody of either child.

Both parties agree Father maintained contact with his children after Father and Mother separated; they disagree, however, about the amount of contact. Father claims he visited the children multiple times a week; Mother, only about four or five times a year. It is undisputed that Father gave Mother money for child support, although the amount and regularity is unclear. Mother conceded in district court that she initiated at least some of the contacts with Father. For example, she and the children sent him cards for his birthday, Father's Day, and several other occasions.

In early September 2003, Father, Mother, and their children had dinner together in Australia, at which time Mother told Father she planned to take their children on a holiday to visit her parents in Texas. Father understood the children would be there

2

for a month before returning to Australia and believed the trip was planned for February 2004. Father signed the necessary papers for the children to receive Australian passports. He did *not* consent to the children's permanent removal from Australia. Mother left Australia with the children in early September 2003, with no intention of returning. Several days later, Father discovered Mother had permanently left the country when he found her telephone line disconnected and her house vacated.

Father attempted to communicate with Mother in Texas. He was able to speak with Mother's parents and ascertain that the children were staying at their home, but Mother refused to speak to him. Father contacted a legal aid organization in Australia, and representatives from that organization informed him this was likely a parental abduction case under the Convention. With the help of the Australian International Family Law Section of the Attorney-General's Department, Father filed the necessary documents to begin the process of having the children returned to Australia under the Convention.

On 27 April 2004, approximately seven months after Mother had removed the children from Australia, Father petitioned the United States District Court for the Northern District of Texas to order the children's return to Australia, per Convention procedure. The district court issued a show cause order to Mother that same day, ordering her to appear for a hearing on 4 May 2004.

Father traveled to Texas for the hearing, during which he was represented by counsel obtained for him by the Australian authorities. Mother elected to proceed *pro se* at the district court hearing, including cross-examining Father. After the first day of the hearing, she consulted with a lawyer; and, on the second day of the hearing, she stated she had a meeting scheduled with another lawyer that afternoon. Mother did not retain counsel until after the district court proceedings had ended. (Mother is represented on appeal.)

At the hearing, Mother testified, among other things: Father is the children's biological father; Father paid token support for the children and occasionally visited them; Mother left Australia with the children less than a year prior to the hearing; Father agreed to sign the papers necessary for the children to get Australian passports; and Mother did not tell Father she planned to stay in the United States permanently. Father testified: he paid child support to Mother weekly; he visited the children at least weekly; he did not consent to the children's permanent removal from Australia; and the Australian government was financing his legal efforts. At the close of the hearing, the district court orally denied Father's petition and did not order the children's return to Australia. It entered an order to this effect on 6 May 2004.

II.

The district court's findings of fact are reviewed for clear error; its legal conclusions, *de novo*. *E.g., **England v. England***, 234 F.3d 268, 270 (5th Cir. 2000). "A factual finding is not clearly erroneous as long as it is plausible in the light of the record as a whole." ***United States v. Powers***, 168 F.3d 741, 752 (5th Cir.), *cert. denied*, 528 U.S. 945 (1999) (internal quotation and citation omitted).

Father maintains Mother wrongfully removed the children from Australia because she left the country with the children in violation of Father's custody rights, which he was exercising at the time of removal. Mother testified as an affirmative defense that Father was *not* exercising his custody rights, so the removal was not wrongful. For the first time on appeal, Mother asserts: returning the children to Australia would pose a grave risk to their well-being; and, at oral argument, she seemed to further assert that removal was not wrongful because no custody proceeding is pending in Australia. Before addressing these issues, examination of the Convention is necessary.

This case is controlled by the Convention, to which both Australia and the United States are signatories. In 1988, the United States ratified the Convention and enacted ICARA, the implementing legislation. Pursuant to ICARA, state and federal district courts have concurrent original jurisdiction of actions arising under the Convention. 42 U.S.C. § 11603(a). A person

5

seeking a child's return under the Convention may commence a civil action by filing a petition in a court in the jurisdiction where the child is physically located. *Id.* § 11603(b). The petitioner bears the burden of showing, by a preponderance of the evidence, that the removal or retention was wrongful, *id.* § 11603(e)(1)(A); the respondent, of proving any affirmative defenses, *id.* § 11603(e)(2).

Under the Convention, courts in contracting countries must return a wrongfully-removed child to his country of habitual residence. Convention, art. 12; 42 U.S.C. § 11601(a)(4). For purposes of the Convention, it is irrelevant whether there is a custody dispute concerning that child pending at the time of removal. Convention, art. 4 ("The Convention shall apply to *any child* who was habitually resident in a Contracting State immediately before any breach of custody rights...."; emphasis added). A parent wrongfully removes a child when he or she removes or retains the child outside the child's country of habitual residence, and this removal: breaches the rights of custody accorded to the other parent under the laws of that country; and, at the time of removal, the non-removing parent was exercising those custody rights. Convention, art. 3.

The Convention provides several narrow affirmative defenses to wrongful removal. *See* Convention, arts. 12, 13, 20. A child may not be returned to his country of habitual residence if the

6

removing party can show, by a preponderance of the evidence, that: the non-removing party was *not* exercising custody rights at the time of the child's removal; or, the child is of proper age and maturity and has decided he does not want to return. Convention, arts. 12, 13(a); 42 U.S.C. § 11603(e)(2)(B). A removing party also may prevent the child's return if she can show, *by clear and convincing evidence*, that: principles relating to the protection of human rights and fundamental freedoms do not permit the return of the child; or, the return would cause grave risk to the child's mental or physical well-being. Convention, arts. 20, 13(b); 42 U.S.C. § 11603(e)(2)(A).

### A.

Concerning Mother's affirmative defense that Father was not exercising his "rights of custody", each child was in Australia and had not left the country prior to their removal. There is no dispute that Australia is their country of habitual residence.

Mother and Father have never been married to each other and have never executed a formal custody agreement. When there is no such agreement between parents, courts must apply the laws of the country of the child's habitual residence to determine if the non-removing parent had "rights of custody" within the meaning of the Convention. Convention, art. 3; *see also* **Whallon v. Lynn**, 230 F.3d 450, 455 (1st Cir. 2000); **Feder v. Evans-Feder**, 63 F.3d 217, 225 (3d Cir. 1995); Elisa Perez-Vera, *Explanatory Report: Hague*

7

*Convention on Private International Law*, ¶¶ 67-68, *in* 3 Acts and Documents of the Fourteenth Session 426, 446 [hereinafter Explanatory Report] (The Explanatory Report is recognized as the official history, commentary, and source of background on the meaning of the provisions of the Convention. *See* Pub. Notice 957, 51 Fed. Reg. at 10503). The Convention defines "rights of custody" as "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence". Convention, art. 5(a).

It was uncontested in district court that Father has "rights of custody" under the Convention, as evidenced by Australian law. In the absence of any orders of court, each Australian parent of a child has custody rights as to the child. Family Law Act, 1975, § 111B(4)(a) (Austl.). Thus, each parent is a joint guardian and a joint custodian of the child, and guardianship and custody rights involve essentially the right to have and make decisions concerning daily care and control of the child. *Id.* §§ 63(E)(1)-(2), (F)(1). No court order has stripped Father of those custody rights.

The only issue before the district court was whether Father *exercised* those rights. At the district court hearing, Mother testified in support of the affirmative defense that her removal of the children was not wrongful because a preponderance of the evidence showed Father did not exercise his custody rights. In this regard, she testified Father rarely visited the children, and,

8

despite his protests otherwise, gave very little money toward their support. She stated such sporadic contact does not constitute the requisite "exercise".

Father disputed this contention. He testified he visited the children at least weekly and regularly deposited child support into Mother's bank account. He maintained such contact and financial support constituted an exercise of his custody rights under the Convention.

The Convention's purpose is to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence ...". Convention, Preamble. The Convention was designed to "restore the pre-abduction status quo". *Friedrich v. Friedrich*, 78 F.3d 1060, 1064 (6th Cir. 1996) (*Friedrich II*). The Explanatory Report to the Convention instructs:

> [F]rom the Convention's standpoint, the removal of a child by one [parent with custody] without the consent of the other, is ... wrongful, and this wrongfulness derives ... from the fact that such action has disregarded the rights of the other parent which are also protected by law, and has interfered with their normal exercise.... *[The Convention] is not concerned with establishing the person to whom custody of the child will belong at some point in the future .... It seeks, more simply, to prevent a later decision on the matter being influenced by a change of circumstances brought about through unilateral action by one of the parties.*

9

Explanatory Report, ¶ 71, at 447-48 (emphasis added).

To this end, the Convention dictates: when a child has been wrongfully removed from his country of habitual residence, the "judicial or administrative authority of the Contracting State where the child is ... *shall* order the return of the child *forthwith*". Convention, art. 12 (emphasis added). Further, the Convention prohibits courts in countries other than that of the child's habitual residence from "adjudicating the merits of the underlying custody dispute". **Nunez-Escudero v. Tice-Menley**, 58 F.3d 374, 376 (8th Cir. 1995); *see also* 42 U.S.C. § 11601(b)(4); Convention, art. 19. The district court properly acknowledged this, stating that "all custody matters relating to the children ... are subject to the exclusive jurisdiction of the Australian courts and must be decided there".

The determination whether a party is exercising custody rights closely parallels the determination of the nature and dimension of those rights. Courts charged with deciding "exercise" under the Convention must not cross the line into a consideration of the underlying custody dispute. To avoid this possibility, American courts have interpreted "exercise" broadly. *See* **Friedrich II**, 78 F.3d at 1063; **Hazbun Escaf v. Rodriquez**, 200 F. Supp. 2d 603 (E.D. Va. 2002); **Freier v. Freier**, 969 F. Supp. 436 (E.D. Mich. 1996); **Sampson v. Sampson**, 975 P.2d 1211 (Kan. 1999). **Friedrich II** held: "The only acceptable solution, in the absence of a ruling from a

10

court in the country of habitual residence, is to liberally find 'exercise' whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child". *Id.* 1065.

> [I]f a person has valid custody rights to a child under the law of the country of the child's habitual residence, that person cannot fail to "exercise" those custody rights under the Hague Convention *short of acts that constitute clear and unequivocal abandonment of the child*. Once it determines that the parent exercised custody rights in any manner, the court should stop—completely avoiding the question whether the parent exercised the custody rights well or badly. These matters go to the merits of the custody dispute and are, therefore, beyond the subject matter jurisdiction of federal courts.

*Id.* 1066 (footnote and citation omitted; emphasis added).

In the light of the Convention's objectives and in consideration of the proper role in the return of children played by courts in contracting countries under the Convention, we adopt this reasoning from *Friedrich II*. Accordingly, in the absence of a ruling from a court in the child's country of habitual residence, when a parent has custody rights under the laws of that country, even occasional contact with the child constitutes "exercise" of those rights. To show failure to exercise custody rights, the removing parent must show the other parent has abandoned the child.

In denying the children's return to Australia, the district court discounted Father's credibility and adopted Mother's version of the facts. We defer to the district court's credibility

11

determinations and will not disturb them unless a review of the evidence leaves us with "the definite and firm conviction that a mistake has been made". ***Tulia Feedlot, Inc. v. United States***, 513 F.2d 800, 806 (5th Cir.), *cert. denied*, 423 U.S. 947 (1975); *see also* FED. R. CIV. P. 52(a). Based on our review of the record, the district court did *not* clearly err in its factual determinations.

Upon *de novo* review of the district court's application of law, however, we hold the district court erred in its conclusion that Mother showed, by a preponderance of the evidence, that Father was *not* exercising his custody rights. At the district court hearing, Mother conceded Father visited the children about five times a year and paid child support to her. At oral argument here, Mother conceded: Father's contacts with the children would constitute "exercise" under the ***Friedrich II*** standard, *if applicable*; and there is no evidence in the record showing Father *completely abandoned* his children. As noted above, the ***Friedrich II*** standard applies in this case. Father did *not* abandon his children. By visiting his children and contributing to their financial support, Father *was* exercising his custody rights at the time Mother removed the children from their country of habitual residence.

B.

Mother raises two issues for the first time on appeal. No authority need be cited for the rule that, generally, we do *not* review an issue not presented in district court.

1.

Mother raises the "grave risk" affirmative defense to removal, described *supra*. She contends returning the children to Australia, specifically in the custody of Father, would constitute a "grave risk" to the children's physical or psychological well-being. (As discussed *infra*, Father does *not* seek custody for their return.)

At the district court hearing, Mother presented some testimony related to this affirmative defense, but she did *not* raise the defense. The testimony by both parents was conflicting and acrimonious, especially when Mother cross-examined Father. Each accused the other of improper conduct toward Mother's child by another man. That child resides with her father in Australia. Although Father is on probation for that conduct, Australia permitted him to travel to Texas.

As discussed *supra*, whether the children face grave risk upon return to Australia must be proved by clear and convincing evidence. This affirmative defense is necessarily a fact-intensive determination which we, as an appellate court, cannot undertake.

2.

13

Mother also seems to contend her removal of the children was not wrongful because there is no pending custody matter concerning them in Australia. She raised this point for the first time at oral argument here. Our usual refusal to review an issue not raised in district court is especially true for issues raised for the first time at oral argument. In any event, as discussed *supra*, the Convention does not require a pending custody suit for removal to be wrongful.

## C.

In sum, Father exercised his Australian custody rights. Mother wrongfully removed the children from their country of habitual residence. The Convention and United States law mandate the children's being returned to Australia "forthwith". Convention, art. 12. The details for that return must be finalized.

## 1.

As Father stipulated at oral argument here, he does *not* request the children be returned in his care or physical custody; nor does he object to the children being returned to Australia in Mother's care and custody. Thus, Mother is to have primary physical custody of the children at all times during the return to, and while in, Australia, pending any custody determination by Australian courts.

## 2.

The district court ordered Father to pay the travel expenses of both children, as well as those of Mother, should any of them be required to return to Australia for court proceedings. The Convention, on the other hand, contains an "optional provision" which states that the court "may, where appropriate" direct the *removing parent* (here, Mother) to cover all legal and travel expenses of the non-removing party. *See* Convention, art. 26; Explanatory Report, ¶ 136, at 468. ICARA more strongly states the court "*shall* order the [removing parent] to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees ... and transportation costs related to the return of the child, unless the [removing parent] establishes that such order would be clearly inappropriate". 42 U.S.C. § 11607(b)(3) (emphasis added).

Accordingly, we remand to the district court for a determination of the logistics of the children's prompt return to Australia. According to Father, the Australian government has been financing his legal efforts. He also states Australia is prepared to pay for the children's airfare on return to that country, as well as Mother's, should she choose to accompany them. If Australian authorities will not pay for the return, the district court must decide who is to pay these costs in its determination of the details of the children's return.

### III.

For the foregoing reasons, we **VACATE** the district court's Order on Petition to Return Children to Habitual Residence and **RENDER** judgment in favor of Father. Accordingly, the children must be returned forthwith to Australia. We **REMAND** to the district court for it to decide the details of that prompt return, including the financial considerations.

*VACATED; RENDERED; REMANDED*