# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-50783

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 1, 2014

Lyle W. Cayce
Clerk

ANGELICA LOPEZ SANCHEZ,

Plaintiff - Appellee

v.

R. G. L., as next friend Alex Hernandez; S. I. G. L., as next friend Alex Hernandez; A. S. G. L., as next friend Alex Hernandez,

Movants - Appellants

Appeal from the United States District Court
for the Western District of Texas

ON SECOND PETITION FOR PANEL REHEARING

Before JOLLY, DeMOSS, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Today, for the third time, we address an appeal by three children who are natives of Mexico, who seek reversal of the district court's finding under the Hague Convention on the Civil Aspects of International Child Abduction that they were being wrongfully retained in the United States and should be returned to Angelica Sanchez, their mother. While this appeal was pending, the United States Citizenship and Immigration Services granted the children asylum. This new evidence is critical to determining whether one or more of the Hague Convention's exceptions to return applies.

No. 12-50783

On February 21, 2014, we vacated the district court order and remanded for further proceedings. *See Sanchez v. R.G.L.*, 743 F.3d 945 (5th Cir. 2014) (withdrawn on rehearing). We issued a second opinion on June 5, 2014, in response to the children's first petition for rehearing. In that opinion, we held that a jurisdictional question regarding the necessity of the Government's being made a party did not need to be resolved because we were ordering the Government's joinder on remand. *See Sanchez v. R.G.L.*, 2014 WL 2532434 (5th Cir. 2014) (withdrawn by this opinion on rehearing).

The children have petitioned for panel rehearing.[1] They argue, and we agree, that we erred in concluding that the jurisdictional challenge raised by the children can be mooted by Rule 19 joinder. We WITHDRAW our previous opinion and issue the present opinion, which restates our initial conclusion that the district court had jurisdiction over Sanchez's petition because the individual with physical custody over the children was a party. We reiterate our conclusion from the rehearing opinion that the Government should be joined in this lawsuit under Federal Rule of Civil Procedure 19. The district court's order to return the children is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

## BACKGROUND

R.G.L., S.I.G.L., and A.S.G.L., the three minor children involved in this appeal, were born and raised in Mexico and are Mexican citizens. They lived with their mother, Angelica Sanchez ("Sanchez"), and her boyfriend, Arturo Quinonez, in Ciudad Juarez, Chihuahua. On June 9, 2012, the children's aunt and uncle, Miriam Lopez Sanchez and Jose Sanchez, brought the children across the border into El Paso, Texas, either without Sanchez's permission or under

---

[1] The occasions when second rehearings are appropriate are *exceedingly* rare, but our legal error in the first rehearing opinion is such an instance. Petitioners' motion to file for rehearing out-of-time is granted. We cannot envision granting leave to file for a third.

2

false pretenses. Several times, Sanchez asked for her children's return. On July 18, 2012, Miriam Sanchez took the children to the Bridge of the Americas in El Paso and instructed the children to cross into Mexico where Sanchez and Quinonez were waiting on them. As the children were walking across the international bridge, they presented themselves to Department of Homeland Security ("DHS") officers and stated that they did not want to return to Mexico because they feared Quinonez.

The DHS officers escorted the children to a passport control office where they interviewed the children. R.G.L., the oldest, told the officers that he and his brothers did not want to return because Quinonez, who they claim was a member of the Azteca gang, was involved in drug trafficking, using drugs, and abusing the children. At some time during the interview, FBI agents contacted the DHS officers and informed them that Sanchez and Quinonez had reported the children kidnapped and were coming to the passport control office, under FBI supervision, to speak with the children. When Sanchez and Quinonez arrived, they were able to speak with R.G.L. briefly and were themselves interviewed separately by FBI agents. Sanchez denied the children's allegations of abuse and informed the agents that her children had been taken to El Paso against her will. Sanchez was informed that DHS would retain custody of the children. She and Quinonez returned to Mexico without the children.

DHS promptly determined that the children were unaccompanied alien children with a credible fear of returning to Mexico. Accordingly, DHS transferred the children to the custody of the Office of Refugee Resettlement ("ORR"), Division of Unaccompanied Children's Services, which is responsible for coordinating and implementing the children's care and placement. ORR, though retaining legal custody, placed the children in the physical custody of Baptist Services Child and Family Services to provide for their care, including education, travel, and medical care. Baptist Services placed the children in a

No. 12-50783

foster home in San Antonio, where they remained until sometime during this appeal. Because the children were declared by DHS to be "unaccompanied alien children," they entered mandatory removal proceedings. ORR, as authorized by statute, appointed pro bono counsel for the children. *See* 8 U.S.C. § 1232(c)(5)-(6). Their counsel applied for relief from removal on a number of grounds, including asylum.

Almost a year after the children had been removed from Mexico, Sanchez filed this suit in district court against the children's aunt and uncle, Miriam and Jose Sanchez, and against the director of Baptist Services, Asennet Segura. She sought access to the children, their return, and an immediate temporary restraining order preventing the children's transfer out of Texas. She claimed entitlement to this relief under the Hague Convention on the Civil Aspects of International Child Abduction and also under the International Child Abduction Remedies Act ("ICARA"). The Hague Convention is an international treaty to which both the United States and Mexico are signatories, *see* T.I.A.S. No. 11670, S. Treaty Doc. No. 99–11, and ICARA is the domestic implementing legislation. *See* 42 U.S.C. § 11601, *et seq*.

Because Hague Convention petitions are intended to be addressed expeditiously, the district court held an evidentiary hearing one month after Sanchez filed her suit. Miriam and Jose Sanchez did not participate.[2] Baptist Services was represented at the hearing, but took no position on whether the children should be returned to their mother. Instead, because it was acting at the direction of ORR in maintaining custody of the children, it argued that ORR was the proper party to the proceedings. The children's ORR-appointed asylum attorney appeared informally at the hearing on the children's behalf, arguing

---

[2] The district court's docket sheet indicates that Miriam and Jose Sanchez were represented by the same counsel as Baptist Services. That counsel, however, did not represent to the court that he was appearing on their behalf.

that the court should allow the children to intervene through Alex Hernandez, as next friend, or in the alternative, grant their motion for the appointment of a guardian ad litem. The district court would later deny the motion, but it allowed the children's attorney to participate in all critical stages of the hearing.

After the hearing, the court directed ORR, who was not formally a party to the proceedings, to answer these questions: "(1) whether this Court has jurisdiction under the Hague Convention; (2) does any procedure in the immigration court preempt or stay this Court's actions; and (3) whether ORR has a position as to whether or not the children would be subject to grave risk or harm by being returned to their mother." ORR, through the Office of Immigration Litigation (which has filed an amicus brief on appeal), informed the court that it "does not take a position at this time" on the first and third question and moved that the district court hold the petition in abeyance pending the disposition of the children's asylum applications.

On August 3, 2013, the district court issued findings of fact and conclusions of law. It acknowledged the difficulties presented by the parallel asylum proceedings but determined that the Hague Convention's demands for expediency counseled against prolonging a resolution of Sanchez's petition. The court did not indicate what bearing, if any, the children's asylum proceedings would have on its grant of relief, though it did suggest that it would be relevant. The court also did not address whether the United States Government, through ORR, was a proper party to the petition and denied the children's request for representation. The district court concluded that the children were "wrongfully retained" within the meaning of the Convention and none of the Convention's exceptions to return applied. Therefore, the court ordered "the minor children be returned forthwith to the custody of Petitioner," but later stayed the enforcement of the order pending this appeal.

No. 12-50783

Two other post-judgment developments are important to this appeal. Shortly after the notice of appeal was filed but before briefing, the United States Citizenship and Immigration Services ("USCIS") granted the children asylum pursuant to 8 U.S.C. § 1158.[3] Among other things, that statute states that in the case of aliens who are granted asylum, "the Attorney General . . . shall not remove or return the alien to the alien's country of nationality." § 1158(c)(1)(A). Secondly, before we held oral argument in this case, the Government informed the court that it was in the process of transferring the children to the physical custody of Catholic Charities. The Government informed us that the transfer would take six to eight weeks, and would vest legal custody, under Texas law, in Catholic Charities. In rehearing briefing, though, the children maintain that their custodial status has not changed.

The children, who are the sole appellants in this case, challenge both the district court's handling of Sanchez's petition and the enforceability of the district court's order in light of the subsequent asylum grant. First, they argue that Sanchez did not have standing to pursue her petition. They assert that the only way Sanchez would have had standing to pursue her petition was by naming ORR as a respondent in her petition. They also argue that even if Sanchez did have standing, none of the respondents meaningfully advanced their interests under the Convention and therefore they had the right to formally participate in the district court proceedings. They also contend that the district court erred in ordering their return in light of the evidence presented.

As for the asylum grant, the children advance alternative theories on how the court should proceed. First, they argue that the district court can no longer

---

[3] It is unclear whether USCIS had more information about the risks to the children than did the district court. Relevantly, there are two unresolved motions related to the children's asylum grant. We grant the children's motion to take judicial notice of their asylum grant but deny the alternative to supplement the record. We also grant the unopposed motion of the Government to seal the assessments in support of the children's asylum grant.

6

No. 12-50783

order their return to Mexico because their asylum status prohibits their return. In the alternative, they argue that this case should be remanded to the district court with instructions for it to consider their asylum grant in order to determine whether they should be returned. Three other interested parties, including the Government, filed amicus briefs in this case. The Government asks the court to remand the proceedings to the district court with instructions for it to consider evidence of the children's asylum grant.

## DISCUSSION

### I. Whether the Children Have Standing to Appeal

Our threshold issue is whether the children, who were not parties, have the right to appeal as *de facto* parties. Sanchez disputes this argument in one paragraph in her brief. The children were the primary opponents of Sanchez's petition for return, even though the district court denied their motion to intervene as respondents. To determine whether a non-party has standing to appeal, we ask: (1) "whether the non-party actually participated in the proceedings below"; (2) whether "the equities weigh in favor of hearing the appeal"; and (3) whether "the non-party has a personal stake in the outcome." *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 329 (5th Cir. 2001) (quotation marks omitted). The factors weigh in favor of finding that the children should be allowed to appeal.

With regard to the first factor, the children's attorney played an active role in the evidentiary hearing, submitting briefs and evidence, and arguing issues before the court. Others who might have responded to the petition – the children's aunt and uncle, their foster parents, the foster agency, or the Government – did not respond meaningfully and failed to assert the Convention exceptions that are designed, in part, to account for the harms that could result from the children's return. As to the other factors, both the equities and the

7

children's strong personal stake in the outcome weigh in favor of permitting their appeal. "In every case under the Hague Convention, the well-being of a child is at stake." *Chafin v. Chafin,* 133 S. Ct. 1017, 1027 (2013). If the appeal is not allowed, we will not be able to consider the arguments that their well-being will be adversely affected by the ruling. We conclude the children have standing to appeal.

### II. Whether the District Court Erred in Ordering the Children's Return

Before we address the merits of the children's arguments, we begin with a general discussion of the Hague Convention, as implemented through ICARA. The Hague Convention has two stated objectives: "a) to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Hague Convention, art. 1. It accomplishes these objectives through the return remedy. *E.g.*, *Abbott v. Abbott*, 560 U.S. 1, 8-9 (2010). This means that under the Convention, a "wrongfully removed" child is returned to his or her home country; the return order is not a determination as to permanent legal or physical custody of the child. *Id.* at 1987. By focusing on the child's return, the Convention seeks to "restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court." *England v. England*, 234 F.3d 268, 271 (5th Cir. 2000) (quotation marks omitted). The return remedy determines the country in which the custody decision is to be made; it does not make that decision.

The implementing statute provides concurrent original jurisdiction over a Hague Convention petition in state and federal court; it sets venue at the location of the child. 42 U.S.C. § 11603(a), (b). "Notice of an action brought under subsection (b) of this section shall be given in accordance with the

applicable law governing notice in interstate child custody proceedings." 42 U.S.C. § 11603(c). The applicable law comes from the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). *See Livanos v. Livanos*, 333 S.W.3d 868, 876 (Tex. App. – Houston [1 Dist.] 2010). As codified in Texas, the UCCJEA states "notice and an opportunity to be heard . . . must be given to all persons entitled to notice under the law of this state as in child custody proceedings between residents of this state, any parent whose parental rights have not been previously terminated, and any person having physical custody of the child." TEX. FAM. CODE ANN. § 152.205(a).

Once a petitioner files and gives notice, ICARA explains both what the petitioner must establish in order to obtain relief and what "a respondent who opposes the return of the child" must show.[4] 42 U.S.C. § 11603(e)(2). To secure the return of the child, the petitioner must establish that the child "has been wrongfully removed or retained within the meaning of the Convention." 42 U.S.C. § 11603(e)(1)(A). Article 3 of the Hague Convention requires a showing that the petitioner had some "rights of custody" that are derived from the child's home country and that she was exercising her custody rights at the time of removal. Hague Convention, art. 3; *see also Larbie v. Larbie*, 690 F.3d 295, 307 (5th Cir. 2012).

The burden then shifts to the respondent to establish "by clear and convincing evidence that one of the exceptions set forth in Article 13(b) or 20 of the Convention applies." 42 U.S.C. § 11603(e)(2)(A). None of the exceptions turn on whether the person removing or retaining was properly exercising custody rights. Article 13(b), for example, concerns whether "there is a grave risk that

---

[4] A petitioner is defined as "any person who, in accordance with this chapter, files a petition in court seeking relief under the Convention," and a respondent is "any person against whose interests a petition is filed in court, in accordance with this chapter, which seeks relief under the Convention." 42 U.S.C. § 11602(4), (6). A person includes "any individual, institution, or other legal entity or body." 42 U.S.C. § 11602(5).

his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention, art. 13b. This exception derives not from a concern for the respondent's rights but "from a consideration of the interest of the child." *See* Elisa Pérez–Vera, *Explanatory Report:  Hague Conference on Private International Law*, ¶ 29, *in* 3, Acts and Documents of the Fourteenth Session, Child Abduction 426, 464 (the "Explanatory Report").[5]  If the respondent fails to show that one of the exceptions applies, the court "shall order the return of the child forthwith." Hague Convention, art. 12.

### A. Proper party defendants

The children begin by arguing the district court lacked jurisdiction to grant Hague Convention relief because Sanchez failed to sue the proper party. They label this issue with the word "standing," which has three elements. "First, the plaintiff must have suffered an 'injury in fact.'" *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).  Second, "a causal connection between the injury and the conduct complained of" must exist.  *Id.*  That is, the injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (quotation marks omitted).  Last, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (quotation marks omitted).  Questions of standing are reviewed *de novo. Bonds v. Tandy*, 457 F.3d 409, 411 (5th Cir. 2006).  Additionally, all elements of standing should be determined "at the outset of the litigation." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).

---

[5] We have previously relied upon the Explanatory Report "as the official history, commentary, and source of background on the meaning of the provisions of the" Convention. *Sealed Appellant v. Sealed Appellee*, 394 F.3d 338, 343 (2004).

No. 12-50783

The children's argument focuses primarily on the last element of the standing inquiry, which is redressability.[6] They argue that the district court order could not redress Sanchez's injury because Segura, the most significant respondent in this case, cannot be compelled in her official capacity as director of Baptist Services to return the children because she was not the actual physical custodian of the children, and even if she could, Baptist Services lacked the legal authority to return her children to her. Instead, the children assert that ORR, as the children's temporary legal guardian, was the only respondent who had the authority to return the children. Therefore, they argue Sanchez should have named ORR in her petition in order to be able to receive any relief. But even then, the children argue that if Sanchez would have named ORR in the petition, it would have failed because the Hague Contention cannot be used to compel the Government to return children within their legal custody.

Sanchez responds that, under the Hague Convention, the person who "controls the body" is the person appropriate for suit. She argues that is so because the necessary respondent under the Convention is the party who can physically complete the return, if ordered. Legal custody is then resolved in the new forum. Thus, she argues, the legal custodian is not needed for jurisdiction. Sanchez is correct that the person with physical custody of the child must be a respondent, regardless of whether someone else has legal custody. For instance, had Jose and Miriam Sanchez continued to retain the children after they entered the United States, they would have been proper ICARA respondents. The issue here is whether Sanchez's failure to join the actual physical custodians (the

---

[6] The children also dispute whether any party named in the petition caused her injury. They suggest that Jose and Miriam Sanchez are not presently causing their mother injury, even if they did initially take them from their mother. Regardless, we discuss later that Segura is a named party who at the time of suit was said to be wrongfully withholding custody from the children's mother.

11

unidentified foster parents) or the Government, as the current legal custodian, deprived the district court of Article III jurisdiction over Sanchez's petition.

The Government has scrupulously avoided taking a position on whether it should have been or must be made a respondent. The district court directed the Government to explain its position on "whether this court has jurisdiction under the Hague Convention." The Government, represented by the Office of Immigration Litigation in the Civil Division of the Department of Justice, answered that "as a general matter, the court has jurisdiction over a Hague Convention case," but it expressly did "not take a position at this time on whether the petitioner has named a proper respondent in this case." It also suggested the court hold the case in abeyance pending the children's asylum determinations. The district court interpreted the position of the Government as agreeing that: (1) the court had jurisdiction over the case and (2) the asylum proceedings would not alter its authority to order the children's return.

Similarly, on appeal, the Government, in its amicus brief, has not suggested that ORR is a necessary respondent in this case. It has contended that the executive branch's proposed interpretation of a treaty, "particularly in light of the Department of State's involvement" in the treaty process, is entitled to "great weight." *See Abbott*, 560 U.S. at 15. The Government's interpretation of the Convention, however, in no way suggested that it was a necessary party. If anything, it did the opposite. In its amicus brief, the Government said that its interest in this case "arises out of its treaty obligations and federal immigration law." It did not state that it had any vested interest by virtue of its legal guardianship of the children or its contractual relationship with Segura or Baptist Services. The clear implication of the briefing was: the Executive Branch did not dispute the district court's jurisdiction to enter an order that the children could be returned to their mother, even without ORR as a party to this

suit.  Further, at oral argument, the Government represented to this court that it would not interfere with a court-ordered return of the children.

Despite these assertions, the children raise a variety of hypothetical scenarios regarding what the Government might do if the district court issues a return order.  The primary argument in their petitions for rehearing  is that Segura will not have authority to carry out the order because ORR *may* prevent her from returning the children.  The children, however, have yet to identify any authority to suggest that the Hague Convention or ICARA requires the Government, as temporary legal custodian, to be involved in this suit.  Put another way, they have failed to identify what would *prevent* Segura from returning the children pursuant to a judicial order.  As explained above, the Hague Convention was designed to afford the child's home country the right to decide legal custody disputes: "Ordering a return remedy does not alter the existing allocation of custody rights . . . but does allow the courts of the home country to decide what is in the child's best interests." *Abbott*, 560 U.S. at 20; *see also England*, 234 F.3d at 271.  Typically, this means serving the petition on the person with *physical custody* of the children in order to effectuate the expedited return of the children to their home country.

We first conclude that no jurisdictional defect arises from the fact that Segura was not the actual physical custodian of the children.  The record indicates that Sanchez was diligent in trying to determine the location of her children and the identity of their custodians.  The United States had an obligation under the Convention to assist with her application.  *See* Hague Convention, art. 7.  It identified the foster service but not the foster parents.  Consequently, Sanchez could not serve notice on the children's actual but unknown physical custodians.  The best she could do was serve her petition on Segura, the person identified by the United States.  Though Segura was not the

actual physical custodian,[7] she had knowledge of the children's location and, as director of child placement, had authority over the Baptist Services to direct their placement. That is enough to oversee the children's return, which would redress Sanchez's injury. The Hague Convention demands no more.

Further, we hold that Sanchez's failure to name the Government as a respondent did not create a jurisdictional defect. The district court did not lack jurisdiction to enter its order because Segura, as either physical custodian or someone with authority over the physical custodian at the time the petition was filed, could provide Sanchez relief under the Convention by overseeing the return of the children to their home country. When "establishing redressability, [a plaintiff] need only show that a favorable ruling could potentially lessen its injury; it need not definitively demonstrate that a victory would completely remedy the harm." *Antilles Cement Corp. v. Fortuno*, 670 F.3d 310, 318 (1st Cir. 2012). Here, a court order for the children's return has the potential, in whole or in part, to redress the claimed injury.

Nevertheless, we conclude that joinder of the Government is required in this action. A party must be joined, if feasible, when joinder is required for certain purposes enumerated in Federal Rule of Civil Procedure 19. The rule provides as follows:

(a) Persons Required to Be Joined if Feasible.

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

---

[7] We note that even if Sanchez had named the unidentified foster parents as John and Jane Doe in her petition, she could not have served the petition on them, and thus could not have given them the notice required by ICARA. Moreover, the children argue that Baptist Services could have been served. That may be correct, but they do not explain why Segura cannot accomplish the same acts as the Baptist Services.

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19.

There are legitimate concerns that, absent the Government as a party, the carrying out of any court order could become difficult. Although the court has jurisdiction, the Government has been the temporary legal custodian throughout this action and selected the children's physical custodian. As previously noted, the record is unclear on whether the Government still retains temporary legal custody and whether Baptist Services retains physical custody; instead, both legal and physical custody may have been transferred to Catholic Charities. The children insist their custodial status is unchanged. These questions fall within the principle that courts at times must decide cases "where the practical impact of [a] decision is not assured." *Chafin*, 133 S. Ct. at 1025. Yet we should also endeavor to increase the level of assurance when practicable.

Failure to include the temporary legal custodian in a situation where a change in physical custody during the appeal has been suggested, presents unusual risks. In order to assure complete relief to Sanchez, the Government should be joined pursuant to Rule 19(a)(1)(A).

Additionally, the children have contended that Segura lacks authority to comply with a return order due to ORR's congressionally mandated custody. *See* 8 U.S.C. § 1232(b)(1) (tasking HHS with care of unaccompanied alien children); 6 U.S.C. § 279(a) (naming ORR as the responsible entity within HHS). Instead, they maintain Baptist Services, as physical custodian, is simply a contractor with ORR and cannot move the children without ORR's prior consent. As a

result, a return order entered by the district court could put Segura, or Baptist Services, in the difficult position of disobeying a court order or breaking contractual and legal obligations to maintain physical custody. In order to avoid potentially imposing inconsistent obligations on Segura, the Government should be joined pursuant to Rule 19(a)(1)(B)(ii).

We therefore hold that the Government should be joined on remand. We leave it for the district court to determine whether the United States, ORR, its director, or some other entity is the proper governmental party. Joinder will expedite a resolution of this case, which has already been delayed too long.

*B. The children's motion to intervene or appoint a guardian* ad litem

The children's second argument is whether the district court should have granted their motions to intervene or to appoint a guardian *ad litem* in light of the fact that none of the respondents asserted the Convention's exceptions. The children argue they have the "right to be heard" but were not allowed to exercise that right in the district court. It is unclear whether they seek reversal on this basis alone or whether they are asking the court to provide instruction to the district court to allow them to intervene if it decides that remand on other grounds is warranted.

Federal Rule of Civil Procedure 24(a) provides for intervention as a matter of right when a prospective party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a). Rule 17(c)(2) provides that a court "must appoint a guardian ad litem – or issue another appropriate order – to protect a minor or incompetent person who is unrepresented in an action." FED. R. CIV. P. 17(c)(2). We review *de novo* the denial of a motion to intervene as a matter of right. *Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 422 (5th Cir.

2002).  Denial of appointment of a guardian *ad litem* is reviewed for abuse of discretion.  *See Fernandez-Vargas v. Pfizer*, 522 F.3d 55, 66 (1st Cir. 2008).

Children are not usually parties to Hague Convention proceedings, though nothing in the Convention expressly prohibits a court from allowing children to intervene.  The First Circuit has stated that some cases, but not "very many," may warrant a child's formal representation in a Hague Convention proceeding. S*ee Walsh v. Walsh*, 221 F.3d 204, 213 (1st Cir. 2000).  District courts have sometimes allowed children to participate through guardians *ad litem* when their interests were not adequately represented by either party.  *See Danaipour v. McLarey*, 286 F.3d 1, 8 (1st Cir. 2002) (noting that the district court appointed a guardian *ad litem*); *Lieberman v. Tabachnik*, 2007 WL 4548570, \*2 (D. Colo. Dec. 19, 2007) (appointing a guardian *ad litem*).  Granting the children representation in appropriate situations is consistent with the Supreme Court's view that "courts can achieve the ends of the Convention and ICARA – and protect the well-being of the affected children – through the familiar judicial tools . . . ."  *Chafin*, 133  S. Ct. at 1026-27.

As we have acknowledged, the circumstances of this case are exceptional. The abducting respondents have disclaimed any responsibility for the children. The children's physical guardian was represented by counsel and participated in the matter when it was before the district court but appeared to be concerned with her own interests.  And the Government, the children's temporary legal guardian, chose not to assert the Convention defenses for the children when queried by the district court.  Moreover, none of the respondents named in Sanchez's petition have participated in this appeal.  Without the informal participation of the children's ORR-appointed counsel, the children would have had no advocates before the district court.

Despite the district court's clear concern for the children, and despite the considerable informal allowances made for the children's attorney, we find that

the children should now be appointed formal legal representation. The children's fundamental interests are at stake in the district court's proceedings, and no respondent is making an effort to represent those interests. Rule 17(c)(2) requires a court to appoint counsel for an unrepresented minor in the proceedings, and these children's interests were unrepresented. On remand, the district court should appoint the children a guardian *ad litem*. We reject, however, the children's assertion that they should be allowed to intervene. The fact that the children have obtained additional "rights" through their asylum grants does not change their status vis-a-vis an ICARA petition. Our concern here is that the children's fundamental interests are represented as embodied in the Hague Convention. The children's asylum grants, as explained below, are only relevant to these proceedings to the extent that they cast some additional light on the relevant Hague Convention defenses, which can be adequately asserted by the court-appointed guardian *ad litem*.

### C. The sufficiency of the district court's findings

The children also attack the merits of the district court's return order. "The district court's findings of fact are reviewed for clear error . . . ." *Sealed Appellant*, 394 F.3d at 342. Relying in particular on *Khan v. Fatima*, 680 F.3d 781 (7th Cir. 2012), they argue that the district court erred by failing to mention the children's psychological evaluations, and perhaps some other evidence, in considering whether any of the Hague Convention's exceptions to return apply. The Seventh Circuit determined that the district court should have considered psychological evidence suggesting that the return of the children to the petitioner would subject them to psychological harm. *Id.* at 788.

Here, critical to the district court's legal conclusion was its factual finding that the children would not be returned to the same threatening situation as they were in when they left Mexico. The psychological evidence presented by the children centered mostly on harm Quinonez was inflicting on their mother and

them and only vaguely referenced the children's belief that the same situation would exist if they were returned because they believed their mother would not permanently leave Quinonez. Sanchez had abandoned Quinonez and that the Mexican government had presented evidence that it could protect the children. *See Walsh*, 221 F.3d at 219. The Convention's exceptions to return, and Article 13(b) in particular, are prospective, whereas the psychological reports are primarily retrospective in nature. The district court did not clearly err by failing to account for the mostly retrospective harm allegedly suffered by the children, or the conclusions of the psychologist, which were based on the children's belief that the same conditions would be present upon their return.

### III. *Effect of asylum grant on the district court's order*

The final issue we address is whether the children's asylum grant should be considered by the district court. The children first argue that an asylum grant directly conflicts with the district court order, and the more recent asylum grant should take precedence over Convention relief under the last-in-time rule. *See Ntakirutimana v. Reno*, 184 F.3d 419, 426-27 (5th Cir. 1999). This argument focuses on the effect of the asylum grant vis-a-vis the district court order and views Sanchez's attempt to secure the return of her children under ICARA as an impermissible collateral attack on the grant of asylum. Alternatively, the children argue that we should remand to the district court for reconsideration of whether the Article 13(b) or 20 exception applies in light of the recent grant of asylum, which is new evidence not considered by the district court.

Sanchez responds that, if Convention relief is found to be in conflict with the asylum grant, the return order should take precedence over the asylum grant because the Convention proceedings were more thorough. She also disputes the argument that it is necessary for the district court to consider the asylum grant because evidence related to that grant was already considered by

the district court.  In its amicus brief, the Government advances the position that a grant of asylum is not dispositive of but is relevant to whether either the Article 13(b) or 20 exception applies.

The children were granted asylum pursuant to the Immigration and Nationality Act ("INA"), as amended by the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. §§ 1158, 1229a, 1232.  To qualify for asylum, an applicant must either have suffered past persecution or have a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A), *incorporated by* 8 U.S.C. § 1158(b)(1)(B)(i).[8] The children's grant of asylum was discretionary,  8 U.S.C. § 1158(b)(1)(A), and provides that "the Attorney General shall not remove or return the alien to the alien's country of nationality . . . ."  8 U.S.C. § 1158(c)(1)(A).

We disagree with the children's argument that the asylum grant must be revoked before they can be returned to Mexico pursuant to the Hague Convention.  The language of the INA indicates that the discretionary grant of asylum is binding on the Attorney General or Secretary of Homeland Security. *See id.*  No authority has been offered to support the argument that the discretionary grant of asylum confers a right to remain in the country despite judicial orders under this Convention.  The asylum grant does not supercede the enforceability of a district court's order that the children should be returned to their mother, as that order does not affect the responsibilities of either the Attorney General or Secretary of Homeland Security under the INA.  *See Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 173 (1993).

The children's asylum grant, though, is relevant to whether the Hague Convention exceptions to return should apply.  We agree with the Government

---

[8]  Because the children were deemed to be unaccompanied alien children, the USCIS made this determination.  *See* 8 U.S.C. § 1158(b)(3)(C).

that there is a significant overlap between the asylum inquiry and Article 13(b) of the Hague Convention. Both focus on the level of harm to which the children would be exposed if returned to their home country. An asylee has been found to face persecution upon return to his or her country of nationality. 8 U.S.C. § 1101(a)(42)(A). Persecution has been defined as an "extreme concept" and turns on whether suffering or harm is likely to be inflicted on the asylum applicant. *Eduard v. Ashcroft*, 379 F.3d 182, 187 & n.4 (5th Cir. 2004). Similarly, Article 13(b) of the Hague Convention requires a respondent to show that "there is a grave risk that his or her return would expose the child to physical or psychological harm." Hague Convention, art. 13(b). The level of harm necessary to trigger the Article 13(b) exception must be "a great deal more than minimal." *Walsh*, 221 F.3d at 218.

Despite similarities, the asylum finding that the children have a well-founded fear of persecution does not substitute for or control a finding under Article 13(b) of the Convention about whether return "would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention, art. 13(b). The judicial procedures under the Convention do not give to others, even a governmental agency, authority to determine these risks. The district court makes an independent finding of potential harm to the children, considering all offered relevant evidence. The prior consideration of similar concerns in a different forum are relevant, but we determine that an asylum grant does not remove from the district court the authority to make controlling findings on the potential harm to the child.

We note also that the evidentiary burdens in the asylum proceedings and those under ICARA's framework are different. To be granted asylum, the children were required to show their eligibility by a preponderance of the evidence. *See* 8 C.F.R. § 1208.13(a),(b)(1)(i). In order for a Convention exception to apply, a respondent must establish the exception by clear and convincing

No. 12-50783

evidence. 42 U.S.C. § 11603(e). The level of participation by interested parties in the two proceedings may also be different, a point Sanchez makes when arguing she did not have an opportunity to make a meaningful presentation prior to the asylum grant.

As the district court recognized, the USCIS grants of asylum are relevant to any analysis of whether the Article 13(b) or 20 exception applies. When faced with a motion to stay the proceedings while the children's asylum application was pending, the district court determined that the interests of a prompt answer under the Convention outweighed the merits of a stay. Now that the children have been granted asylum, though, all available evidence from the asylum proceedings should be considered by the district court before determining whether to enforce the return order.

CONCLUSION

The district court's return order is VACATED. The case is REMANDED to the district court with instructions to determine the current physical and legal custodian; to join the Government, if it still retains temporary legal custody, as a party respondent; to appoint the children a guardian *ad litem*; and to consider the asylum grants, assessments, and any related evidence not previously considered that relates to whether Article 13(b) or 20 applies. Any remaining issues such as whether the oldest child is no longer subject to these proceedings, can be addressed. Finally, we repeat our previous statement, which was echoed in the previous dissent, that the United States Government should take "all appropriate measures" to fulfill its Convention-imposed duties, including an obligation to "facilitate the institution of judicial or administrative proceedings with a view to obtaining the return of the child." Hague Convention, art. 7.

No. 12-50783

HAROLD R. DeMOSS, JR., Circuit Judge, DISSENTING:

In my judgment, the proper disposition of this appeal would be for this court to affirm the district court's October 30, 2012 decision which ordered that the children be returned to the custody of their mother pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("the Hague Convention"). *See* 42 U.S.C. § 11601, *et. seq.*

As the district court acknowledged, this case is peculiar because collateral to their mother's Hague Convention action in the district court the boys were seeking asylum in administrative proceedings. After the district court issued its order, the boys were granted asylum. I am unaware of any controlling authority which indicates that a grant of asylum necessarily precludes the return of a child under the Hague Convention.

Turning to the Hague Convention analysis, the district court determined that Mexico was the children's country of habitual residence, that their mother had rights of custody, that the children were being wrongfully retained, that the mother was exercising her custodial rights or would have been exercising those rights absent the removal or retention, and that no exceptions to returning the children were applicable. The record reflects that the district court spent a tremendous amount of time and effort considering whether exceptions to returning the children under the Hague Convention were applicable. The district court went as far as interviewing the two older children. Ultimately, I am unpersuaded that the district court erred in finding that the exceptions to the Hague Convention were inapplicable.

Finally, I want to address the fact that the mother filed her case under the Hague Convention nearly a year after the boys left Mexico. In my mind, such a delay is likely attributable to the facts of this case. It appears as though the mother is a woman of limited means, and after leaving Mexico the children have been shuffled between various administrative agencies and

foster organizations.    Given these facts, it is no wonder that it took the mother several months to file a lawsuit.    As the majority notes, the United States has certain responsibilities under the Hague Convention.    I urge the Department of State, the designated Central Authority, to fully comply with its statutory duties. *See id.* at § 11606; Exec. Order No. 12,648, 3 C.F.R. 579 (1988).