HAYNES, Circuit Judge,
dissenting:
Although I am filing a dissent, I wholeheartedly agree with the majority opinion’s statement: “[I]t is our great hope that [PARB’s] parents will find a way to bridge their differences for the sake of the child that they have brought into the world together.” Maj. Op. at 475. Our court cannot function as mediators here, but we can say with one voice: “You owe your child better than this” and urge both parents to make a concerted effort to settle this matter in PARB’s, not their own, best interests.
That said, as an appellate case, this appeal presents a narrow question: Did Ber-ezowsky and Rendon share an intent to make Mexico PARB’s habitual residence? The district court found that they did, and that finding must be affirmed unless it is clearly erroneous.[1] Because, in holding the opposite, the majority opinion fails to give the necessary deference to the district court’s finding, and instead engages in its own independent weighing of the facts, I respectfully dissent.
The majority opinion correctly notes that the district court’s determination of a child’s habitual residence presents a mixed question of law and fact that we review de novo. Maj. Op. at 465; see Larbie v. Larbie, 690 F.3d 295, 306 (5th Cir.2012), cert. denied, — U.S.—, 133 S.Ct. 1455, 185 L.Ed.2d 361 (2013); see also Nicolson v. Pappalardo, 605 F.3d 100, 105 (1st Cir.2010) (observing that some deference should be awarded to the district court’s application of the habitual residence standard); Papakosmas v. Papakosmas, 483 F.3d 617, 623 (9th Cir.2007) (noting that de novo review in this context is not a “full de novo review” and that the district court’s decision as to habitual residence is still entitled to some deference). The majority opinion also correctly “join[s] our sister circuits in treating the shared intent determination as a factual finding that is reviewed for clear error.” Maj. Op. at 466 n. 7. Under this standard, we must affirm the district court’s determination that Bere-zowsky and Rendon shared an intent to make Mexico PARB’s habitual residence unless it is implausible in light of the record as a whole. See Larbie, 690 F.3d at 306 (“A factual finding survives review so long as it is plausible in the light of the record as a whole.” (citation and internal quotation marks omitted)). I observe that deferential review of a factfinder’s determination of questions involving credibility is a hallmark of appellate review. See Anderson v. Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (emphasizing the deference appellate courts must pay to trial courts’ factual findings and noting the “special deference to be paid credibility determinations” under Federal Rule of Civil Procedure 52(a)); see also Estate of Lisle v. C.I.R., 541 F.3d 595, 601 (5th Cir.2008) (citing Anderson, 470 U.S. at 573-75, 105 S.Ct. 1504). Intent is certainly one such issue where credibility is a key part of the equation. See, e.g., Southgate Master Fund, L.L.C. v. United States, 659 F.3d 466, 487 n. 68 (5th Cir.2011) (collecting cases).
The district court’s finding that Bere-zowsky and Rendon shared an intent to make Mexico PARB’s habitual residence is plausible in light of the record as a whole *477 and should be affirmed. After a two-day evidentiary hearing during which Berezow-sky and Rendon testified, the district court examined the facts and found that Bere-zowsky and Rendon shared an intent to make Mexico PARB’s habitual residence[2]:
Although [PARB] was born in the United States, the facts establish that the parents intended to make Mexico [PARB’s] habitual residence. Specifically, [Berezowsky] and [Rendon] are both Mexican nationals, they met while residing in Mexico, they are not citizens of the United States, do not own real property in the country, and do not have immigration status that allows them to permanently reside here. Moreover, [Rendon] moved [PARB] to Mexico pursuant to a Texas court order that designated Mexico as [PARB’s] place of residence. In the Texas [0]r-der, both parents listed Mexico as their place of residence. [Rendon] admitted, and the evidence establishes, that he represented to the Mexican courts that his residence was Mexico. In other words, the evidence establishes that neither parent has meaningful or deep-rooted ties to the United States. Moreover, [PARB] resided in Mexico for approximately thirteen months and was attending school there before [Rendon] removed him to the United States. Therefore, based on these undisputed facts, the Court concludes that Mexico was [PARB’s] habitual residence.
Berezowsky v. Ojeda, No. 4.-12-CV-03496, 2013 WL 150714, at *4 (S.D.Tex. Jan. 14, 2013). This finding is plausible in light of the record as a whole.[3]
*478 As the district court observed, Rendon moved PARB to Mexico pursuant to the Texas Order, which unequivocally provided that “the primary residence of [PARB] shall be relocated and restricted to the geographical area comprised by the following contiguous geographic areas situated in and around the Federal District or the State of Morelos of the United Mexican States: 1. Delegación Coyoaeán, Mexico Distrito Federal; 2. Delegación Tlalpan, Mexico Distrito Federal; and/or 3. Cuer-navaca, Morelos.” It also provided Ren-don “[t]he exclusive right to designate the primary residence of [PARB] within the following contiguous geographic areas situated in and around the Federal District or the State of Morelos of the United Mexican States: a. Delegación Coyoaeán, Mexico Distrito Federal; b. Delegación Tlalpan, Mexico Distrito Federal; and/or c. Cuer-navaca, Morelos.” The Texas Order further explained that “once the relocation of [PARB] to the above described geographical area is complete, the parties shall not remove [PARB] from that area for the purpose of changing the primary residence of [PARB] until modified by further order of the court of continuing jurisdiction or by written agreement signed by the parties and filed with the court.”
The majority opinion dismisses the significance of the Texas Order by concluding that its reference to PARB’s “primary residence” does not establish that Mexico became his “habitual residence.”[4] Crucially, however, any difference between these phrases is irrelevant for determining the intent of Berezowsky and Rendon because it is the parents’ actions in response to the Texas Order — not the order itself — that demonstrates their shared intent to make Mexico PARB’s habitual residence. Specifically, Berezowsky and Rendon both respected the decision of the 410th District Court of Texas and agreed to abide by it by settling in Mexico with PARB. They informed the 410th District Court of Texas that their mailing and residential addresses would be located in Mexico. Even Ren-don’s attorney at the time confirmed Ren-don’s intent in an email to Berezowsky’s attorney, which explained that Rendon “has no intention of returning to Montgomery County,” Texas.[5] After moving to *479 Mexico, Rendon continued to represent to Mexican courts that his residence was in Mexico. PARB began attending school in Mexico and resided there for approximately thirteen months before Rendon removed him to the United States.
Unfortunately, that shared intent did not lead to harmony. Shortly thereafter, Berezowsky and Rendon found themselves seeking relief in Mexican courts and the 410th District Court of Texas.[6] Indeed, the majority opinion observes that Rendon received an order lifting the Texas Order’s geographical restriction just months after the order was entered and the parties moved to Mexico.[7] Nevertheless, while the parties’ intent may no longer be aligned, the record supports the district court’s conclusion that the last (and seemingly only) time they shared an intent to make a particular place PARB’s habitual residence was when all three individuals moved to Mexico in compliance with the Texas Order. See Gitter v. Gitter, 396 F.3d 124, 133 (2d Cir.2005) (“In nearly all of the cases that arise under the [Hague] Convention, however, the parents have come to disagree as to the place of the child’s habitual residence. It then becomes the court’s task to determine the intentions of the parents as of the last time that their intentions were shared. Clearly, this is a question of fact in which the findings of the district court are entitled to deference, and we consequently review those findings for clear error.”).
In sum, the district court observed firsthand Berezowsky and Rendon’s testimony and weighed their actions following the Texas Order to determine that they shared an intent to make Mexico PARB’s habitual residence.[8] Berezowsky, 2013 WL 150714, *480 at *4. Such a determination is plausible m light of the evidence and, therefore, must be affirmed.
In addition to proving that Mexico was PARB’s place of habitual residence, Bere-zowsky’s claim for wrongful removal also required her to show that Rendon’s removal violated her “rights of custody” under Mexican law and that she was exercising those rights at the time of removal.[9] See 42 U.S.C. § 11603(e)(1); Larbie, 690 F.3d at 307. The district court concluded that she made such a showing because “the 24th Family Court [in Mexico] gave [Bere-zowsky] full and exclusive parental rights over [PARB],” and Berezowsky exercised those rights by, inter alia, taking PARB to school and providing for his welfare. Berezowsky, 2013 WL 150714, at *5-7. Ren-don’s argument on appeal concerning these elements is limited to his assertion that he had custodial rights over PARB based on the 410th District Court of Texas’s Clarifying Order issued in February 2012. However, this order does not affect Berezow-sky’s rights of custody under the laws of Mexico, the country of habitual residence. See Larbie, 690 F.3d at 307. As such, I would hold that the district court did not err in concluding that Berezowsky demonstrated she had the rights of custody over PARB under Mexican law and was exercising them at the time of his removal.[10]
Because the district court did not err in concluding that Berezowsky established that PARB was wrongfully removed from Mexico, I would affirm the district court’s grant of Berezowsky’s petition. From the failure of the judgment to so hold, I respectfully dissent.

. I agree with the majority opinion’s suggestion that both sides have engaged in forum shopping. We are not here tasked with determining who has "clean hands,” and that is a fortunate thing for the parties.

. The majority opinion faults the district court for discussing the habitual residence determination for only one paragraph, and for "mi-sunderfstanding] what is required to form a shared parental intent for purposes of the habitual residence determination. A shared parental intent requires that the parents actually share or jointly develop the intention. In other words, the parents must reach some sort of meeting of the minds regarding their child’s habitual residence, so that they are making the decision together.” Maj. Op. at 468 (citing Larbie, 690 F.3d at 310, and Mozes v. Mozes, 239 F.3d 1067, 1081 (9th Cir.2001)) (emphasis in original). I disagree that the parents must testify that they sat down together and explicitly agreed to a child’s habitual residence to have a “shared intent.” These cases often involve parents who "no longer share an intent on the child's habitual residence” at the time of trial and who may have formed any mutual intent during a trip abroad with an originally ambiguous intended duration. Koch v. Koch, 450 F.3d 703, 713 (7th Cir.2006); see also Ruiz v. Tenorio, 392 F.3d 1247, 1253 (11th Cir.2004) (describing categories of shared intent cases, including where a court finds "a shared settled purpose, despite one parent having had qualms about the move,” if "the family has jointly taken all the steps associated with abandoning habitual residence,” and another category "where the petitioning parent had earlier consented to let the child stay abroad for some period of ambiguous duration,” and "despite the lack of perfect consensus, the court finds the parents to have shared a settled mutual intent that the stay last indefinitely.” (internal citations and quotation marks omitted)); Mozes, 239 F.3d at 1075 ("Of course, one need not have this settled intention at the moment of departure; it could coalesce during the course of a stay abroad originally intended to be temporary. Nor need the intention be expressly declared, if it is manifest from one's actions; indeed, one’s actions may belie any declaration that no abandonment was intended.”). Parties’ actions demonstrate their shared intent as well as words. Id.
To the extent that the majority opinion concludes the district court applied the wrong legal standard in making factual findings about shared intent, the better practice would be to remand for further findings instead of the appellate court finding the facts itself and rendering a decision on the merits. See, e.g., Martin v. Bedell, 955 F.2d 1029, 1031, 1036 (5th Cir.1992) (remanding for limited fact-finding in light of legal standards announced in the decision).

. Again, the majority opinion appears to discount the district court’s findings because the district court did not specifically find that *478 Berezowsky and Rendon reached a meeting of the minds regarding PARB’s future. But the district court explicitly found that Bere-zowsky and Rendon shared an intent to make Mexico PARB's place of habitual residence, and that proves sufficient. See Berezowsky, 2013 WL 150714, at *4. If more clarification is needed based on the legal standard the court introduces in its majority opinion, then the case should be remanded for further findings, instead of vacating the decision and remanding for dismissal.

. Relying on Barzilay v. Barzilay, 600 F.3d 912 (8th Cir.2010), the majority opinion also states that “the mere fact that the Texas Order designates Mexico as PARB's primary residence is insufficient to demonstrate a shared parental intent for Mexico to become the habitual residence.” However, Barzilay is easily distinguishable. In Barzilay, the divorcing parents agreed through a repatriation agreement that their children would be relocated to Israel if either parent moved there. Id. at 915. However, following the divorce, the father eventually moved to Israel, but the mother refused to move there permanently with the children. The court concluded that Israel could not supplant the United States as the children’s habitual residence based only on the repatriation agreement. Id. at 920. Contrarily, Berezowsky and Rendon not only acquiesced to moving to Mexico with PARB pursuant to the Texas Order, but actually implemented this agreement. Indeed, this shared decision to settle in Mexico appears to be one of the only things on which these parties have agreed amidst almost constant litigation.

. Throughout its analysis, the majority opinion weighs particular pieces of evidence, including this email and Berezowsky’s assertion that she brought all of her belongings to Mexico, to suggest that such evidence does not *479 establish that Berezowsky and Rendon shared an intent to make Mexico PARB’s place of habitual residence. First, no single piece of evidence in this case, considered alone, can establish a shared intent to make Mexico PARB’s place of habitual residence. Second, and more fundamentally, while such evidence could be viewed as not necessarily evincing a shared intent with respect to PARB’s habitual residence, it is not implausible to interpret such evidence (when viewed in light of all of the facts) as establishing a shared intent. Again, in a situation where reasonable minds can disagree in weighing the evidence concerning parents’ shared intent, we must defer to the district court’s finding when it is plausible in light of the record. See Larbie, 690 F.3d at 306.

.Berezowsky also appears to have ceased her compliance with the Texas Order by failing to take the steps necessary to have Rendon recognized as PARB’s father in Mexico. While Berezowsky's apparent failure to implement all aspects of the Texas Order (and other similar conduct) certainly cannot be condoned, the issue in this appeal is limited to determining whether she and Rendon shared an intent to make Mexico PARB’s place of habitual residence.

. The question of whether the 410th District Court of Texas had exclusive, continuing jurisdiction to enter its Clarifying Order in February 2012 is a red herring with respect to the habitual residence analysis. This order purported to make Rendon PARB’s sole managing conservator and give him sole custody and the exclusive right to designate PARB's primary residence with no geographic restrictions. Even assuming the court had exclusive, continuing jurisdiction to enter this order, Berezowsky maintains that she was not properly served with Rendon’s Petition to Modify and did not participate in the proceedings that led to this order. Indeed, she has refused to abide by the order. Therefore, without addressing whether Berezowsky may be bound by this order in other contexts, it cannot be said that the order helps establish a shared intent concerning PARB’s habitual residence.

. While not necessarily relevant to the habitual residence determination, it is worth noting that this finding respects the Texas jury’s conclusion that PARB should reside with his parents in Mexico. See In re A.B.G., No. 09 — 11— 00545-CV, 2013 WL 257311, at *2 (Tex.App.Beaumont 2013, no pet.).

. Having concluded that Berezowsky failed to meet her burden with respect to the habitual residence determination, the majority opinion does not address these additional elements of a wrongful removal claim.

. Finally, as Rendon observes, we would not be bound to order the return of PARB if Rendon establishes one of “several narrow affirmative defenses to wrongful removal.'' Sealed Appellant v. Sealed Appellee, 394 F.3d 338, 343 (5th Cir.2004); see also Larbie, 690 F.3d at 308. While Rendon argued to the district court the affirmative defense that PARB’s return presented a grave risk of harm to him, he argues on appeal that the affirmative defense of consent applies. The majority opinion does not reach the issue of consent because it alternatively concludes that Bere-zowsky failed to establish Mexico as PARB s habitual residence. I also would not reach the issue of consent because Rendon failed to plead it as an affirmative defense and did not raise it before the district court. See Fed. R.Civ.P. 8(c); John R. Sand & Gravel v. United States, 552 U.S. 130, 133, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008); Celanese Corp. v. Martin K. Eby Constr. Co., Inc., 620 F.3d 529, 531 (5th Cir.2010) ("The general rule of this court is that arguments not raised before the district court are waived and will not be considered on appeal.”). Indeed, in his Answer, Rendon "admits that Petitioner has not consented to or acquiesced to the removal of [PARB] from Mexico and the nonreturn of [PARB] by Rendon. Petitioner’s consent to remove [PARB] from Mexico is unnecessary.”